**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

v.

DANIEL SHAW,

Case No. 1-22-cr-00001-JEB

# DEFENDANT'S SENTENCING MEMORANDUM

## INTRODUCTION

Defendant Daniel Shaw is before the Court after pleading guilty to one count of Parading, Demonstrating, or Picketing in a Capitol Building, a misdemeanor violation of 40 U.S.C. § 5104(e)(2)(G), 40 U.S.C. § 5109(b). Mr. Shaw was arrested in December 2021, and has been on pretrial release since without so much as one violation. *See* Presentence Report ("PSR") at 1, ¶¶ 5,6. Mr. Shaw has a strong work history, but has not worked since 2014 due to permanent disability. PSR ¶ 51. He is the sole provider and caretaker for his teenage son since his wife died from cirrhosis of the liver related to alcoholism in 2015. PSR ¶ 34. Mr. Shaw also is an alcoholic, but has been sober since he nearly lost his life and hurt his son in a DUI accident in 2017. PSR ¶ 46. The DUI and related child cruelty charge are Mr. Shaw's only prior convictions.

On November 17, 2022, Mr. Shaw pleaded guilty to Count Four of the Information, pursuant to a plea agreement. Per the plea agreement, the parties agree the sentencing guidelines do not apply and the statutory maximum penalty is 6 months' imprisonment. PSR ¶61. Mr. Shaw agrees to pay restitution of $500. *Id*. The government will dismiss counts one, two, and three.

The probation office recommends a sentence of 36 months' probation, including location monitoring and $500 restitution. Dkt. 36. The government requests 30 days' incarceration, 36 months' probation, 60 hours' community service, and $500 restitution.

Mr. Shaw's offense contributed to the attack on the Capitol and democracy on January 6, 2021. He admits his conduct and, contrary to the government's argument, takes responsibility for his actions by acknowledging that in hindsight he should not have entered the Capitol. Operating under a truth shared by others and fed to him through media and the former President Trump himself, Mr. Shaw thought he would bring his son to a historic moment in D.C. – when the vote count would be corrected, and Mr. Trump would be named president. Stuck in COVID, he thought the trip would be a chance to get out and explore with his son who had been struggling emotionally. While Mr. Shaw may continue to express his political beliefs, he did not go to the Capitol to cause harm, violence or destruction. His actions while there and since on pretrial release show that he does not pose such risks.

Given Mr. Shaw's disability and role as sole provider for his son, his single prior criminal justice interaction driven by alcoholism, his perfect compliance on pretrial release, and his relatively limited conduct and lack of destructive intent or actions on January 6, Mr. Shaw respectfully requests that the Court impose a sentence of time served, 24 months' probation, and $500 restitution.

## BACKGROUND

### I. Mr. Shaw's personal history and characteristics

#### A. Background and family

Mr. Shaw is a 56-year-old man who has resided in Santa Rosa, California for the majority of his life. PSR ¶¶ 31, 35. He is a widow after his wife of nearly ten years passed away in 2015 from cirrhosis of the liver due to alcoholism. PSR ¶ 34. Mr. Shaw and his wife have one child together, 16-year-old Thomas. *Id*. Thomas lives with his father and attends high school. *Id*. Mr. Shaw is very involved in his son's life. He has supported him in his athletic endeavors, namely football and wrestling. After his mother's death, Thomas had an extremely difficult time emotionally. *Id*. His struggles were compounded when COVID hit and his outlet of sports was shutdown, further isolating him and building up his emotions. *See id*. Seeing his father involved in the instant offense has also caused challenges for Thomas. *See id*.

Other than his son, Mr. Shaw does not have relationships with family. PSR ¶ 33. He and his parents have different views, as he explains, and they have not had a relationship for approximately five years. *Id*. Mr. Shaw has one brother, but also has no contact with him. *Id*. ¶ 32.

**B. Mr. Shaw's physical disabilities and condition, alcoholism, and criminal history**

Mr. Shaw worked as an operating engineer running large equipment on solid rock for 25 years. PSR. ¶¶ 39, 51. In 2014, he became permanently disabled due to the intense nature of the work that caused bone spurs and other injuries. PSR ¶ 39.

During his life, Mr. Shaw battled alcoholism, as did his late wife. PSR ¶¶ 34, 46. In March 2017, his alcoholism led to a near-death car accident in which his son was a passenger. PSR ¶ 46. Mr. Shaw almost died as the result of the accident and could have seriously hurt or killed his son. *Id*. He realized how far his alcoholism had gone and that he was jeopardizing the life of the person he most loved and still had. *Id*. The severity and intensity of this experience made Mr. Shaw walk away from drinking; he has not drank since. *Id*. He participated in court-ordered DUI classes and community service. *Id*. The DUI and related child cruelty are Mr. Shaw's only criminal convictions and arrest. He was sentenced to 90 days' jail and 48 months' probation. PSR ¶ 26.

From the accident, Mr. Shaw suffered major injuries. He was hospitalized for three months, broke his neck and back, was intubated, and had numerous reconstructive surgeries as verified by medical records provided to the probation officer. PSR ¶ 40. Mr. Shaw has since suffered additional injuries, compounding those from his car accident and work injuries. In 2018 Mr. Shaw broke his back after slipping on his deck. PSR ¶ 41. Just two years later, he broke his back again when a tree fell on him. PSR ¶ 41. Mr. Shaw does not currently take any medication but goes on walks outside and engaged in other alternative treatments to try to keep up his physical mobility. PSR ¶¶ 42, 43.

**C. Mr. Shaw's post-offense conduct and performance on pretrial release**

Mr. Shaw was arrested on December 3, 2021 in the Northern District of California. PSR ¶ 5. He spent four days in Santa Rita Jail. While in custody, due to COVID protocols, he was placed in essentially solitary confinement for quarantining purposes. On December 6, 2021, Mr. Shaw was released on his own recognizance. *Id*. He has been on pretrial release for more than 1 year and 3 months without a single pretrial violation or other incident. Mr. Shaw has remained in communication with his pretrial officer, met her for all meetings, not had firearms or other weapons in his home, sought travel permission when his son had athletic events, has had no drug or alcohol use, and no other

contact with law enforcement. Mr. Shaw has focused on caring for his son's well-being, his health, and for his property, especially after rebuilding his home that was burned down in the fires in 2017.

The government points to Mr. Shaw's social media posts and comments made in the required post-plea interview to argue that Mr. Shaw fails to express remorse for his conduct. But Mr. Shaw's persistent political views are constitutionally protected conduct that he should not be punished for. He has not only agreed to a lengthy statement of offense, but as acknowledged by the government, stated in his interview "that, in hindsight, he now understands the riot was a problem." Gov't Memo. Dkt. 37 at 9. While his perspective of the riot – where he heard people praying, interacted with nice people, understood that police or guards indicated people could go into the Capitol – may seem incredulous to the government, one, it is of little consequence given Mr. Shaw's overall acceptable of responsibility. Two, there were clearly a broad swath of individuals with a multitude of goals present at the Capitol – some with clear intentions to cause destruction, violence, and harm, some there to be disrespectful to political leaders, and some there to voice their support of President Trump, getting swept up in the moment and the mass of people. As Mr. Shaw also stated at his interview with the government: he had never seen so many people, you moved with the people, I'd never seen anything like it. The focus of this case should be on Mr. Shaw's actual conduct, not his political views or perspectives.

**II. The nature and circumstances of the offense**

The PSR and Mr. Shaw's statement of offense detail his conduct. PSR ¶¶ 7-18. Mr. Shaw brought his son to the Capitol on January 6, 2021 and attended the "Stop the Steal" rally. PSR ¶ 16. They listened to President Trump's speech, were emboldened by the President's words and the crowds around them, and proceeded with others to the east side of the U.S. Capitol. PSR ¶ 16. Videos show Mr. Shaw stepping over a bike rack and proceeding with others up the east side Capitol steps where they eventually entered the Capitol. PSR ¶¶ 16, 17. Mr. Shaw recorded portions of himself as he approached and entered and took photos once inside the Rotunda. PSR ¶ 17. Mr. Shaw, his son, and a traveling companion, Mr. Kenneth Reda, stayed in the Rotunda for about 14 minutes before exiting. PSR ¶ 17. As described in his post-plea interview, while inside the Rotunda, Mr. Shaw asked some officers if there was a bathroom available, but after none was, he, his son, and Mr. Reda left the Capitol to return to the hotel to use the restroom. Mr. Shaw did not engage in any violence. He did not

destroy any property. He did not engage in any other disrespectful behavior like breaking into politicians' offices or using inappropriate language in videos posted on social media of himself in the Capitol.

As Mr. Shaw describes, he truly believed that January 6 would be a day where he and his son would witness democracy as they understood it – seeing Mr. Trump be named president after the vote was corrected. However naïve, misplaced, or outlandish this may seem, it was Mr. Shaw's belief based on his consumption of news media and conversations with others that shared the same views.

Now, however, Mr. Shaw has stepped away from the chaos, upheaval, and emotion of that day to see that his actions were unlawful and he did not have permission to enter the Capitol. PSR ¶ 18. He sees that the riot was not what he came for and how his actions contributed to destruction and danger for others despite that he did not personally feel any danger. In his post-plea interview, Mr. Shaw articulated that whatever his views may be, they are not worth getting arrested for and he will not again engage in behavior that will put his liberty and his son's safety and security at risk.

In sum, Mr. Shaw's conduct was unlawful and contributed to the horrible, disturbing events of January 6, 2021, and Mr. Shaw takes responsibility for his actions.

**ARGUMENT**

A sentencing court's "overarching duty" is to "impose a sentence sufficient, but not greater than necessary, to comply with the sentencing purpose set forth in § 3553(a)(2)." *Pepper v. United States*, 562 U.S. 476, 491 (2011) (cleaned up). Those goals include the need to: (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (2) afford adequate deterrence to criminal conduct; (3) protect the public from further crimes of the defendant; and (4) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *See* 18 U.S.C. § 3553(a)(2). Section 3553(a) also directs the Court to consider additional factors, including: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, § 3553(a)(1); the kinds of sentences available, § 3553(a)(3); the need to avoid unwarranted sentencing disparities, § 3553(a)(6); and the need to provide restitution to any victims of the offense, § 3553(a)(7). Because this case only involves a Class B Misdemeanor, petty offense, the United States Sentencing Guidelines do not apply. 18

U.S.C. § 3559; U.S.S.G. § 1B1.9. Here, a sentence of time served, and 24 months' probation best serves the goals of sentencing and prevents unwarranted sentencing disparities.

**I. A sentence of time served and probation best served the purposes of punishment**

A custodial sentence is not necessary to adequately punish Mr. Shaw, deter him and others from similar conduct, to reflect the seriousness of the offense, or to ensure the protection of the public. Mr. Shaw's conduct was wrong and unlawful. Each individual present was necessary to create the mass chaos, anarchy, and danger that occurred on January 6. As to punishment he deserves, however, his conduct should be viewed on the continuum of that displayed by those on January 6. Mr. Shaw did not use violence, have weapons, wear any type of riot gear, live-stream and engage followers, or otherwise incite others. He did bring his minor son with him, but given he is his son's sole guardian and his expectations for the day – that the "true" vote would be revealed – it is clear he was not taking his son to be part of violent riot. Rather, Mr. Shaw got swept up and let his judgment lapse. Further, Mr. Shaw and his son spent less than 15 minutes in the Rotunda, taking photos, walking around, and asking to use a restroom. Given this limited conduct, Mr. Shaw's three nights in custody, in harsh solitary conditions, over one-year term of supervised pretrial release, two years of probation with conditions, and restitution, are significant punishments. Mr. Shaw has also been contacted by media attempting to interview him, subject to community scrutiny, and the case has caused stress for his already emotionally fragile teenage son, all collateral consequence that have a real effect on him. These punishments and repercussions have and will specifically deter Mr. Shaw.

General deterrence is also served by time served and probation. Despite not doing anything violent or inciting, Mr. Shaw went to jail for three nights. That is a significant warning for someone – that no matter your age, disability, or being the sole provider for a child – the government has and will arrest you – not just issue a summons – for this type of conduct. A sentence of 24 months' probation, under strict U.S. probation scrutiny, is also a strong general deterrent. Individuals like those who attended January 6 appear to share the general distrust and disbelief of government. One of the worst consequences is then having to succumb to it for months and years while having to divulge one's movements, finances, and other private information. This is of real consequence for individuals of the mindset that the January 6 election was stolen.

For the reasons relevant to deterrence, the defense's requested punishment, also reflects the seriousness of the offense. It shows that the U.S. government will assert strict control over one's life for several years even for the relatively limited conduct of entering the Capitol for 14 minutes and taking photos and videos. The Supreme Court in *Gall v. United States*, 128 S. Ct. 586 (2007) made clear that while a term of probation is less severe than a term of incarceration, it is nonetheless a significant punishment as it substantially restricts an individual's liberty.

> Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty. *See United States v. Knights*, 534 U.S. 112, 119, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled' " (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987))). Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. USSG § 5B1.3.

*Id.* at 595–596 (internal footnotes omitted). Further, here, probation is recommending numerous conditions, including an additional imposition on Mr. Shaw's liberty in the form of a restriction of his Second Amendment right to bear arms. This is yet another serious potential consequence, punishment, and signal of how serious courts may view the offense.

As to protection of the public, for over a year, Mr. Shaw has shown that he poses no threat to the public. He has been perfectly compliant. His criminal history also weighs in favor of him not presenting a danger to the public given his sole prior criminal justice interaction was due to alcoholism that he now has controlled.

Finally, a sentence of custody will severely impact Mr. Shaw, creating a sentence greater than necessary in his circumstances. First, even a short term of 30 days' custody will affect Mr. Shaw's teenage son, Thomas, because Mr. Shaw is his sole caretaker after the death of his wife. Were Thomas to lose his father for this period of time, it would be practically and emotionally destabilizing, punishing him as much as his father. Second, Mr. Shaw is 56 years old, permanently disabled, and endures pain from a host of serious injuries including his 2017 car accident and two other broken

backs. There are no comforts in jails and Mr. Shaw would endure additional, unnecessary physical pain were he to be in jail for 30 days. Third, it is possible that Mr. Shaw's Social Security disability benefits will cease on the 30th day of incarceration and will not resume again until after he has been released for at least a month, causing financial strain on him and his son.[1]

**II. Given other similarly situated Capitol riot defendants, a probation sentence is appropriate**

A sentence of time-served and probation is also justified in light of the sentences imposed on similarly situated Capitol riot defendants. Among those sentenced for a single violation of 40 U.S.C. § 5104(e)(2)(G), aggravating and mitigating factors influence a defendant's sentence. In Mr. Shaw's case he did not have weapons or other supplies suggestive of violence, he did not incite others, and while there are text messages with Mr. Reda, it does not appear he had a clear or firm premeditated intention to join the riot that unfolded. The probation sentence requested in this case by the defense and probation is not anomalous. Although no case exactly mirrors the facts in Mr. Shaw's case, this Court and courts in this district have sentenced defendants with similar histories to probation or home confinement. For example:

- *United States v. Edwards*, 1:21-cr-366 – sentenced to 12 months' probation, $250 fine, and 200 hours' community service. Government recommended 14 days' incarceration and 24 months' probation. Defendant was 68-year-old retiree that entered through the Senate Wing Door, where broken glass was, and went into a senator's office that was ransacked. Defendant's wife posted comments making clear defendant saw individuals causing destruction and yet he continued.

- *United States v. Andrew Bennett*, 1:21-cr- 227-JEB – sentenced to 3 months' home detention, 24 months' probation, and 80 hours' community service. Government also recommended 3 months' home detention and probation. According to the government memorandum, defendant was an admirer of the Proud Boys, sent a boastful post regarding his entry into the Capitol, but also admonished others to not be destructive or fight with officers, was cooperative, and did not engage in violence or property destruction.

- *United States v. Douglas Macrae*, 1:22-cr-00181-JEB – sentenced to 12 months' probation and 150 hours' community service by this Court. Government asked for 4 months' home detention as part of 36-month-term of probation and 60 hours' community service. Defendant

[1] If you receive Social Security, we'll suspend your benefits if you're convicted of a criminal offense and sentenced to jail or prison for more than 30 continuous days. We can reinstate your benefits starting with the month following the month of your release." *See* Social Security Administration, Publication No. 05-10133 "What Prisoners Need To Know" (June 2021) https://www.ssa.gov/pubs/EN-05-10133.pdf

entered building while taking photos and filming, boasted he had entered on Facebook posting "I made it deep into the Capitol Building," responded that he was in the building after knowing that someone was shot, and initially told law enforcement that he believed he lawfully entered despite having worked in a building in the U.S. Capitol complex and therefore knowing that he nor others could freely enter a government building under the circumstances.

- *United States v. Israel Tutrow*, 1:21-cr-00310-ABJ – sentenced to 60 days' home confinement where defendant had a "significant" criminal history, entered and remained in the Capitol for about 30 minutes, *while armed with a knife*, and later lied to police.

- *United States v. Zlab*, 1:21-cr-00389-RBW – sentenced to 36 months' probation over government request of 45-day custodial sentence. Defendant left the Capitol only when law enforcement officers made efforts to push him out, after he had been told to leave. Defendant had a prior domestic violence conviction and entered sensitive areas including House Appropriations Room and made a video of the use of tear gas.

- *United States v. Lori Vinson*, 1:21-cr-00355-RBW – court imposed a sentence of 60 months' probation, despite government seeking 30 days' incarceration, where defendant made unremorseful statements to the media after the riot, including "I would do it again tomorrow."

In contrast, defendants were sentenced to custodial terms in the following illustrative circumstances where they either incited others, destroyed property, or their conduct evinced a clear goal to engage in riot-like behavior.

- *United States v. Paul Westover*, 1:21-cr-00748-JEB – government sought 3 months' incarceration and this Court imposed 45 days' incarceration. Defendant went past group of police he referred to as the "front line," penetrated the Capitol into the Speaker's suite and exited through a broken window, witnessed and celebrated the theft of government property by his travel companions, destroyed evidence by deleting photos and videos from his accounts and phone, and his actions suggested lack of remorse. Defendant shouted "we're coming, Nancy" as he "stormed" the Capitol, in his words.

- *United States v. Jordan Revlett*, 1:21-cr-00281-JEB – government sought 30 days' incarceration and 36 months' probation and this Court sentenced him to 14 days' incarceration, 12 months' probation, and 80 hours' community service. Defendant spent more than 30 minutes in the Capitol, took photos and videos showing altercations between police and rioters, broadcasted his conduct, obtained a bullhorn in the Rotunda and used it to make statements and join in chants with other rioters against the police.

- *United States v. Jennifer Ryan*, 1:21-cr-00050-CRC – government sought and received a 60-day sentence where defendant live-streamed her activities to her numerous followers, encouraged a violent attack, and expressed no remorse thereafter.

- *United States v. Mariposa Castro*, 1:21-cr-00299-RBW – sentenced to 45 days' custody. Defendant live-streamed presence on Capitol grounds for 47 minutes, articulated her desire to break into the Capitol, entered through a smashed window, called upon her social media follows to join her in a "civil war," and later posted that she intended to return to the Capitol.

Further, the government urges that Mr. Shaw should receive a more significant sentence than his companion Mr. Reda – who was sentenced to two months' home detention and 36 months' probation – because Mr. Reda did not bring a minor to the Capitol, was not on probation, and because Mr. Reda noted he intervened to help police officers. Gov't. Memo. at 18. Even accepting these facts as weighing in favor of a lesser sentence for Mr. Reda, they ignore countervailing facts of Mr. Shaw's particular circumstances. Specifically, that Mr. Shaw has disabilities and the sole responsibility for his minor son, both of which would be severely and negatively affected were he to serve custodial time.

**III. The defense's objections to the PSR**

The defense notified the probation officer of its objections to the proposed probation conditions on February 24, 2023 and filed objections on March 3, 2023. Dkt. 34. The defense maintains its objections despite the probation officer's response. As to the challenge of condition 11 requiring Mr. Shaw to notify others the probation officer determines Mr. Shaw poses a risk to, the real-life problem with this condition need not be present now to be ripe. Whether or not this issue may arise, "uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." *Cal. Teachers Ass'n. v. State Bd. of Educ.*, 271 F.3d 1141, 1151 (9th Cir. 2001) (cleaned up). Here, the vagueness of "posing a risk," may cause the probation officer to limit Mr. Shaw's First Amendment associational rights more broadly than necessary.

**CONCLUSION**

For the reasons stated, Mr. Shaw respectfully requests that the Court impose a sentence of time served, 24 months' probation, and $500 restitution.

March 13, 2023
Dated

JODI LINKER
Federal Public Defender
Northern District of California

/S

ELISSE LAROUCHE
Assistant Federal Public Defender