UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 1:22-cr-00001 (JEB) |
| v. : | |
| : | |
| DANIEL SHAW, : | |
| : | |
| Defendant : | |

**GOVERNMENT'S MOTION SEEKING FIREARM RESTRICTION AS A CONDITION OF DEFENDANT'S TERMS OF PROBATION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this motion in connection with the above-captioned matter. Defendant objected to a restriction placed on his possession or access to firearms and/or dangerous weapons during probation as a violation of his Second Amendment rights. The Government opposes this objection, and for the reasons set forth herein, the Government moves this Court to impose a restriction on the defendant's possession or access to a firearm and/or dangerous weapon as a condition of the Defendant's terms of probation.

**Procedural Background**

On January 4, 2022, the United States charged Shaw by a four-count information charging Shaw with violating 18 U.S.C. § 1752(a)(1) and (2) and 40 U.S.C. § 5104(e)(2)(D) and (G). On November 17, 2022, pursuant to a plea agreement, Shaw pleaded guilty to Count Four of the Information, charging him with a violation of 40 U.S.C. §5104(e)(2)(G). On March 17, 2023, Shaw was sentenced to ten days' incarceration as a condition of 24 months' probation, 100 hours' community service, and $500 in restitution. ECF No. 40.

I. **Introduction**

The defendant objected to the PSR's proposed condition of a firearms and/or dangerous weapons restriction, arguing that this would violate his Second Amendment right to bear arms. ECF No. 35. The PSR requested several conditions of probation be imposed on the defendant, including a condition that the defendant have "no possession or access to firearms and/or dangerous weapons during supervision." ECF No. 35, ¶69. The PSR further specified that "[u]nder 18 USC §3563(b)(8), the court may provide that the defendant 'refrain from possessing a firearm, destructive device, or other dangerous weapon.'" ECF No. 35, fn. 4. The PSR further noted that such a restriction "serves the statutory sentencing purpose of public protection, 18 USC §3553(a)(2)(C), by allowing the probation officer to supervise the defendant without risk to safety caused by the possession of weapons." The PSR further noted that the defendant can satisfy this condition by *temporarily* transferring the rights to another. *Id.* During the sentencing hearing, the defendant, relying on *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111(2022), renewed his objection to the inclusion of a firearms and/or dangerous weapons restriction as a term of his impending probation.

II. **Legal Analysis**

In *Bruen*, 142 S. Ct. at 2122, the Supreme Court held that the Second Amendment protects the right of "ordinary, law-abiding citizens" to "carry a handgun for self-defense outside the home." *Bruen* struck down a New York law that required residents to demonstrate a "proper cause" to obtain a license to carry a handgun outside the home because that law "prevent[ed] law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *Id.* at 2122, 2156.

*Bruen* rejected the "two-step" framework adopted by most courts of appeals (including this Court) after *Heller* that "combine[d] history with means-end scrutiny." *Bruen*, 142 S. Ct. at 2125-26. *Bruen* observed that "[s]tep one of the predominant framework is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history." *Id.* at 2127. But the Court "decline[d] to adopt" the second step of that framework, holding that "*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context." *Id.* at 2126-27.

*Bruen* "reiterate[d]" the "standard for applying the Second Amendment." *Bruen*, 142 S. Ct. at 2129. First, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 2129-30. Second, when a regulation burdens such presumptively protected conduct, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130.

The Second Amendment does not prevent the disarming of a person as part of their punishment for a criminal conviction. As the Supreme Court has explained, "the right secured by the Second Amendment is not unlimited," and it does not protect a right "to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). And the Court has said that nothing in its opinion "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." *Id.* Notably, the Supreme Court has defined the Second Amendment right to bear arms as a right belonging to "law-abiding, responsible" citizens. *Heller*, 554 U.S. at 635; *see New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2122, 2125, 2131, 2133, 2134, 2138, 2150, 2156 (2022) (repeatedly stating that the amendment protects the rights of "law-

abiding" citizens). Here, the defendant has been convicted and sentenced for violating 40 U.S.C. §5104(e)(2)(G), so the defendant is not a "law-abiding citizen."

The government is aware of no decision that has ever interpreted the Second Amendment to prevent disarming a person as part of his criminal sentence. Such a view would make little sense given the many other liberty restrictions that can be imposed as part of a criminal sentence. In this case, the defendant could have been sentenced to upwards of six months' incarceration, during which time he necessarily would have been disarmed. And although he was sentenced to a term of probation, with only a ten-day period of incarceration as a condition, he can constitutionally be disarmed even during that part of his probation in which he is not incarcerated. Temporarily restricting his access to firearms and dangerous weapons during his probation will be only a temporary restriction and will be far less restrictive than the sentence of incarceration that he could have received.

Reading the Second Amendment to prevent disarming a person during the duration of his criminal sentence would also be inconsistent with the Second Amendment's text as historically understood. *Heller* explained that "the Second Amendment was not intended to lay down a 'novel principl[e]' but rather codified a right 'inherited from our English ancestors.'" *Heller*, 554 U.S. at 599 (quoting *Robertson v. Baldwin*, 165 U.S. 275, 281 (1897)). The 1689 English Bill of Rights, which "has long been understood to be the predecessor to our Second Amendment," *id.* at 593, provided that "the Subjects which are Protestants, may have Arms for their Defence suitable to their Conditions, and as allowed by Law," *id.* (quoting 1 W. & M., ch. 2, § 7, in 3 Eng. Stat. at Large 441). The wording of that provision indicates that those who violated the law could be prevented from possessing arms. And the Constitution's ratification debates support this understanding of the Amendment's text as well. In what *Heller* called a "highly influential"

4

proposal, 554 U.S. at 604, a group of Pennsylvania antifederalists advocated for an amendment guaranteeing the right to bear arms "unless for crimes committed, or real danger of public injury." *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc) (quoting 2 Bernard Schwartz, *The Bill of Rights: A Documentary History* 662, 665 (1971)).  This "Second Amendment precursor[ ]," *Heller*, 554 U.S. at 604, indicates that the Amendment allowed people to be disarmed for "crimes committed," either permanently or at least during the duration of their sentences.

Section 3563(b)(8)'s authorization of a firearm restriction as a condition of probation is also "consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126.  As the D.C. Circuit has explained, felons historically were subject to severe punishments, including the death penalty and estate forfeiture. *Medina v. Whitaker*, 913 F.3d 152, 158 (D.C. Cir. 2019).  And that court found it "difficult to conclude that the public, in 1791, would have understood someone facing death and estate forfeiture to be within the scope of those entitled to possess arms."  *Id.*  Thus, that court held that "felons are excluded from the scope of the Second Amendment." *Id.*

Historically, even those who had not committed a felony could be deprived of their firearms.  During the Revolutionary War, Connecticut passed a law providing that any person who "shall libel or defame" any acts or resolves of the Continental Congress or the Connecticut General Assembly "made for the defence or security of the rights and privileges" of the colonies "shall be disarmed and not allowed to have or keep any arms." Public Records of the Colony of Connecticut 193 (1890) (1775 law).  And, at the recommendation of the Continental Congress, *see* 4 Journals of the Continental Congress 205 (1906) (resolution of March 14, 1776), at least six states disarmed the "disaffected" who refused to take an oath of allegiance to those states*, see, e.g.*, 5 The Acts and Resolves, Public and Private, of the Province of the Massachusetts Bay 479 (1886) (1776 law); 7

Records of the Colony of Rhode Island and Providence Plantations, in New England 567 (1776 law); 1 The Public Acts of the General Assembly of North Carolina 231 (1804) (1777 law); 9 Statutes at Large; Being A Collection of All the Laws of Virginia 282 (1821) (1777 law); Rutgers, New Jersey Session Laws Online, Acts of the General Assembly of the State of New-Jersey 90 (1777 law); 9 Statutes at Large of Pennsylvania 348 (1779 law).  These laws demonstrate that, at the time of the founding, legislatures had the authority to disarm even non-violent people whom they deemed not to be law-abiding and trustworthy.

Moreover, a number of colonies or states near the time of the founding passed laws requiring misdemeanants to forfeit their guns.  *See, e.g.*, 3 Laws of the Commonwealth of Massachusetts from November 28, 1780 to February 28, 1807, with the Constitutions of the United States of America, and of the Commonwealth, Prefixed 37-38 n* (1897) (1783 law) (storing a loaded gun in Boston); 1 Complete Revisal of All the Acts of Assembly, of the Province of North Carolina, Now in Force and Use 446-447 (1773) (1768 law) (deer hunting by non-freeholders); Acts of the General Assembly of the Province of New-Jersey 344 (1776) (1771 law) (nonresident of the state carrying a gun on land not his own); 1 Private and Special Statutes of the Commonwealth of Massachusetts from the Year 1780 to the Close of the Session of the General Court, Begun and Held on the Last Wednesday in May, A.D. 1805 (1805) (1790 law) (carrying a gun on a certain part of Naushon Island).  Although these laws are not identical to the firearm-prohibition condition in 18 USC § 3563(b)(8), the government need not identify a "historical twin."  *Bruen*, 142 S. Ct. at 2133.  Temporarily preventing a person from possessing a firearm during his probation imposes a "comparable burden" to these historical laws and is "comparably justified."  *Id.*

Like the historical laws, the discretionary condition in 18 U.S.C. § 3563(b)(8) restricts the firearm possession of people who have violated the law or otherwise shown that they are untrustworthy. And § 3564(b) provides even more protection than many of those historical laws, in that it requires a district court to conclude that the condition "involve[s] only such deprivations of liberty or property as are reasonably necessary" to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes by the defendant. 18 U.S.C. § 3563(b); *see* 18 U.S.C. § 3553(a)(2). The temporary restriction on the defendant's ability to possess a firearm while he serves his federal sentence is therefore entirely consistent with the historical tradition.

Finally, putting aside Second Amendment concerns, the firearm condition is sufficiently justified under the facts of this case. As noted in the PSR, this restricted access to firearms and/or dangerous weapons is imposed to ensure the safety of the public, which includes the probation officers supervising the defendant during the limited time of his probation. To satisfy the standard in § 3563(b), the government needs to show only that the condition is "reasonably necessary" to serve the purposes in § 3553(a)(2), including the need to protect the public. And although the defendant did not engage in violent conduct as part of his underlying offense, the presence of a firearm in his home during the completion of his federal sentence creates a heightened risk to the safety of probation officers. Notably, this is the same restriction imposed on the defendant as a condition of release prior to his conviction. And this restricted access to firearms and/or dangerous weapons is not a restriction in perpetuity, but rather will expire after 24 months, and will ensure the safety of others, including the probation officer(s) supervising his sentence of probation.

**III.     Conclusion**

The defendant's Second Amendment right, a right bestowed upon law-abiding citizens, will only be temporarily restricted during the pendency of his probation and will be far less restrictive of the defendant's liberties than a sentence imposing a lengthier term of incarceration. For the reasons stated above, the government moves this Court to impose a condition of probation which restricts the defendant's possession or access to firearms and/or dangerous weapons.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By:     /s/ *Maria Y. Fedor*
MARIA Y. FEDOR
Attorney, detailed to the
United States Attorney's Office for the
District of Columbia
D.C. Bar No. 985823
601 D Street, N.W.
Washington, DC 20530
Maria.Fedor@usdoj.gov