**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Criminal Action No. 22-1 (JEB)** |
| **DANIEL SHAW,** | |
| **Defendant.** | |

<u>**MEMORANDUM OPINION**</u>

Earlier this year after a guilty plea, this Court sentenced Defendant Daniel Shaw to a two-year term of probation for a misdemeanor conviction arising from his participation in the January 6, 2021, insurrection at the United States Capitol. The Government now asks the Court to impose a condition restricting Shaw from accessing or possessing firearms during that period of probation. Although courts have struggled to determine when and how the Government may restrict the possession of firearms after the Supreme Court radically redrew the landscape in <u>New York State Rifle & Pistol Ass'n, Inc. v. Bruen</u>, 142 S. Ct. 2111 (2022), the question presented here is far simpler. Because this Court finds a gun restriction both warranted under 18 U.S.C. § 3563 and consistent with the Second Amendment, it will grant the Motion and impose such condition.

## I.    Background

Shaw was among the rioters who entered the U.S. Capitol on January 6th and interrupted Congress's certification of the 2020 electoral-vote count. <u>See</u> ECF No. 29 (Statement of Offense). On November 17, 2022, he pled guilty to one misdemeanor count of Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).

1

See ECF No. 28 (Plea Agreement).  In its presentence report, the Probation Office recommended a sentence of probation subject to a set of standard conditions, which included a requirement that Shaw refrain from possessing or accessing firearms or other dangerous weapons.  See ECF No. 35 (Presentence Report) at 14.  The Court subsequently sentenced Shaw to 10 days' incarceration as part of a sentence of 24 months' probation.  See ECF No. 40 (Judgment) at 3–4.  Shaw objected to the firearms restriction at sentencing, and, after hearing brief oral argument, the Court directed the Government to file a motion if it sought to impose that condition.  See ECF No. 42 (Motion to Amend Judgment) at 2 (describing oral-argument colloquy); Minute Order of Mar. 23, 2023.  That Government Motion, which Shaw opposed, is now ripe.  See ECF No. 43 (Gov't Motion to Modify).

## II.     Legal Standard

District courts have broad discretion to oversee a defendant's probation.  See United States v. Feinberg, 631 F.2d 388, 391 (5th Cir. 1980) (citations omitted); see also Burns v. United States, 287 U.S. 216, 221–22 (1932) (discussing Court's discretion under prior version of relevant probation statute).  In particular, district courts are "afforded wide discretion when imposing" probation terms and conditions.  United States v. Legg, 713 F.3d 1129, 1131 (D.C. Cir. 2013); accord United States v. Accardi, 669 F.3d 340, 346 (D.C. Cir. 2012); United States v. Sullivan, 451 F.3d 884, 895 (D.C. Cir. 2006).  While its discretion in supervising a probationer is cabined by the constitutional and statutory frameworks that the Court analyzes below, "fairness of the proceedings" is the primary concern.  United States v. Davis, 748 F. App'x 449, 452 (3d Cir. 2018) (citing United States v. Evers, 534 F.2d 1186, 1188 (5th Cir. 1976)).

### III.    Analysis

Shaw offers two arguments as to why the Court should not impose the standard probation condition restricting his possession of firearms: the first is statutory, the second constitutional. The Court considers each in turn.

### A.  Statutory Challenge

The parties first dispute whether or not a firearms restriction is warranted under 18 U.S.C. § 3563, the statute governing probation conditions.  That statute lists mandatory conditions that a court "shall" impose as part of a probation sentence, id., § 3563(a), as well as discretionary conditions that a court "may" impose as well.  Id., § 3563(b).  It authorizes courts to impose such discretionary conditions "to the extent that such conditions are reasonably related to" the 18 U.S.C. § 3553(a)(1) and (a)(2) sentencing factors and "involve only such deprivations of liberty or property as are reasonably necessary" to serve the § 3553(a)(2) factors.  See 18 U.S.C. § 3563(b).  Those sentencing factors require consideration of:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

To determine whether a deprivation is reasonably necessary to serve those interests, our Circuit has instructed that district courts must "weigh the consequences for the defendant's liberty against any likely achievement of the statutory purposes."  United States v. Russell, 45

F.4th 436, 441 (D.C. Cir. 2022) (quoting United States v. Malenya, 736 F.3d 554, 559 (D.C. Cir. 2013)).  In the supervised-release context, that means something akin to a "narrow tailoring requirement."  Malenya, 736 F.3d at 559–60 (quoting United States v. Holm, 326 F.3d 872, 877 (7th Cir. 2003)); see also United States v. Perazza–Mercado, 553 F.3d 65, 73 (1st Cir. 2009); United States v. Voelker, 489 F.3d 139, 144–45 (3d Cir. 2007).

Under the discretionary condition at issue here, 18 U.S.C. § 3563(b)(8), a district court may require that a probationer "refrain from possessing a firearm, destructive device, or other dangerous weapon."  Such a restriction would require Shaw to temporarily transfer any firearms in his possession to someone else, who could return them to Defendant at the conclusion of his probationary period.  See Gov't Mot. to Modify at 2.

The Court first considers the extent to which a § 3563(b)(8) firearms restriction here would serve the § 3553(a) factors, and it then reviews whether promoting those sentencing goals is worth the intrusion on Shaw's liberty.

    1.  *§ 3553(a) Factors*

The § 3553(a) factors here strongly favor imposing a firearms restriction during Shaw's probation term for several reasons.  See also, e.g., United States v. Juv. No. 1 (LWQ), 38 F.3d 470, 472–73 (9th Cir. 1994) (explaining how firearms restriction served § 3553 factors).  First, the Court concludes that such a restriction appropriately reflects the seriousness of the offense as per § 3553(a)(1) and (a)(2)(A).  Shaw's conviction derives from his participation in the January 6th insurrection at the United States Capitol.  He was part of a violent mob that sought to stop the peaceful transfer of power by force.  The nature of that event puts Shaw's offense very far from the types of negligent infractions that some circuits have held do not warrant a firearms restriction.  See United States v. Voda, 994 F.2d 149, 153–54 (5th Cir. 1993) (negligent

discharge of pollutant did not warrant firearms restriction); see also United States v. Warren, 186 F.3d 358, 367 (3d Cir. 1999) (explaining that in Voda "[t]he district court had given no reason on the record for imposing the condition"); but see United States v. Jensen, 132 F.3d 41, 1997 WL 787384, at *1 (9th Cir. 1997) ("Although [probationer] has no history of offenses involving firearms or violent conduct, and no criminal history whatsoever beyond his felony conviction for tax fraud, the prohibition on his possessing firearms nonetheless reasonably serves the sentencing goals of punishment and deterrence."). The Court accordingly concludes that, while Shaw's role in the mob was minor, the fact of his participation in an insurrection whose aim was to impair the peaceful transfer of power suggests that a firearms restriction during his probationary period is appropriate.

Second, such a restriction would help deter future criminal conduct, as contemplated by § 3553(a)(2)(B). The Court emphasizes here that Shaw was still serving a probationary sentence when he participated in the January 6th insurrection. On December 19, 2017, Defendant had been convicted in California state court of Child Cruelty (Possible Injury or Death) and Driving While Under the Influence. See Presentence Report at 7–8. He was sentenced to 90 days in jail and 48 months of probation — a probation period that he was still serving when he entered the Capitol on January 6th. Id., see also ECF No. 37 (Gov't Sentencing Memorandum) at 12. As Defendant has demonstrated a willingness to engage in criminal acts while on probation, the Court concludes that more restrictive probation conditions are particularly important as a deterrent here.

The relative brevity of Shaw's sentence and probation period, moreover, recommend such a restriction as a deterrent. "[W]hen . . . a district court selects a shorter term of imprisonment, it may correspondingly want to impose more restrictive [release conditions] . . . in

order to achieve Section 3553(a)'s goals of deterrence and protection of the public." Malenya, 736 F.3d at 564 (Kavanaugh, J., dissenting).  In the Court's view, the relative brevity of Shaw's confinement — just ten days — justifies more restrictive probation conditions in order to serve as an adequate deterrent.  See also Juv. No. 1 (LWQ), 38 F.3d at 472.

Third, a firearms restriction would serve as an important aid to the Probation Office's oversight of Shaw and would thereby promote public safety per § 3553(a)(2)(C).  As the Probation Office's manual on probation and supervised release describes, firearms restrictions are standard conditions because of the role they play in promoting public safety.  See Admin. Office of the U.S. Courts Prob. & Pretrial Servs. Office, Overview of Probation and Supervised Release Conditions 34–35 (2016), http://www.uscourts.gov/sites/default/files/overview_of_ probation_and_supervised_release_conditions_0.pdf [https://perma.cc/K2LB-9Y99].  "By allowing the probation officer to supervise the defendant without risk to safety caused by the possession of weapons," the manual explains, a firearms restriction "enables the probation officer to satisfy the statutory requirements to keep informed as to the conduct and condition of the defendant, report the defendant's conduct and condition to the sentencing court, and aid the defendant and bring about improvements in his or her conduct and condition." Id. at 35 (citing 18 U.S.C. § 3603(2)–(3)).  Those reasons are the same ones the Probation Office offered in seeking a firearms restriction here.  See Presentence Report at 14 n.4 ("Removal of firearms and other dangerous weapons from a person under supervision serves the statutory sentencing purpose of public protection, 18 U.S.C. § 3553(a)(2)(C), by allowing the probation officer to supervise the defendant without risk to safety caused by the possession of weapons.").  The Court finds that assessment entirely reasonable as applied to Shaw and, particularly in light of

the Probation Office's expertise in implementing and supervising terms of probation, gives great weight to that explanation.

Defendant's specific history already mentioned, moreover, suggest that a firearms restriction would particularly serve public-safety interests here. Shaw participated in an armed insurrection against the United States and has shown a willingness to engage in unlawful behavior while on probation. Both of those facts suggest that a firearms restriction would facilitate his supervision and serve the third sentencing factor especially well here.

All told, these factors strongly suggest that a firearms restriction is warranted. (Section 3553(a)(2)(D) is not relevant here as Shaw does not need educational, vocational, or other treatment as part of his sentence.)

2. *Liberty Consequences*

The Court relatedly concludes that such a restriction is sufficiently important to justify any intrusion on Shaw's liberty. As compared to other common probation conditions — including warrantless searches on a probationer's home and restrictions on travel, computer usage, contact with children, and the like — a firearms restriction works a far narrower invasion of liberty here. Indeed, Shaw is already subject to a host of such restrictive conditions to which he makes no objection. These include requirements that he "live at a place approved by the probation officer"; "allow the probation officer to visit [him] at any time at [his] home or elsewhere"; "not communicate or interact with someone [he] know[s] is engaged in criminal activity"; if the Court "determines that [he] pose[s] a risk to another person," that Shaw "notify the person about the risk"; and generally that Shaw "follow the instructions of the probation officer related to the conditions of supervision." Judgment at 5–6; cf. Russell, 45 F.4th at 440 (noting range of other liberty-intrusive supervised release conditions to which defendant was

subject and did not challenge).  In relation to those measures, the intrusiveness of the firearms restriction is comparatively small.

Relatedly, the "relatively short duration" of a probationary period "diminishes the overall impact of the special conditions on [his] liberty."  Malenya, 736 F.3d at 564 (Kavanaugh, J., dissenting).  Shaw's probationary period runs for only 24 months, limiting the intrusiveness of this restriction.  Given that relative brevity and the fact that Shaw can retake possession of his firearms at its conclusion, the Court finds that a firearms restriction's value in promoting the § 3553(a)(2) factors outweighs its intrusion on Shaw's liberty.  It will accordingly impose one unless doing so would violate the Constitution — which is Defendant's next position.

B.  Constitutional Challenge

Shaw's second challenge is to the constitutionality of a firearms restriction.  At the outset, the Court notes that the parties briefed this issue as though the question were the broad one of whether misdemeanants in general have a Second Amendment right to possess firearms.  See Gov't Mot. to Modify at 5–7; ECF No. 45 (Def. Response) at 5–18.  But that is not the issue here.  The question is simply whether a condition that spans only the duration of the probation period unconstitutionally restricts any such Second Amendment right.  That framing makes all the difference here because probation conditions often restrict constitutional rights that citizens might otherwise hold.  Even assuming that convicted misdemeanants have a general right to possess firearms, then, the question in this case is whether a probation condition restricting such a right is constitutional.  The Court first describes the framework that governs constitutional challenges to probation conditions and then applies that framework to Shaw's argument.

1. *Legal Standard*

The Court begins with a fundamental point: persons on probation enjoy a more restricted set of rights than other members of society.  That is because "[p]robation, like incarceration, is a form of criminal sanction imposed by a court upon an offender after verdict, finding, or plea of guilty."  United States v. Knights, 534 U.S. 112, 119 (2001) (quoting Griffin v. Wisconsin, 483 U.S. 868, 874 (1987)).  As the Supreme Court has described, probation is "one point on a continuum of possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service."  Id. (internal quotation omitted). Because probationers "do not enjoy the absolute liberty to which every citizen is entitled," id. (internal quotation omitted), probation conditions may "deprive the offender of some freedoms enjoyed by law-abiding citizens."  Id.; see also United States v. Cogliense, 34 F.4th 1002, 1010 (11th Cir. 2022) ("[A probation] condition is not invalid simply because it affects a [defendant's] ability to exercise constitutionally protected rights.") (quoting United States v. Zinn, 321 F.3d 1084, 1089 (11th Cir. 2003)).

Several examples serve to illustrate the point.  Begin with the Fourth Amendment context, in which courts have held that probationers enjoy dramatically fewer rights than other citizens.  In Knights, for instance, the Supreme Court held constitutional a probation condition that allowed police to search a probationer's home based only on reasonable suspicion — not on probable cause, and not with a warrant.  See 534 U.S. at 121; see also Note, The Right to Be Free from Arbitrary Probation Detention, 135 Harv. L. Rev. 1126, 1140, 1142 (2022) (describing probationers' "lesser right to liberty than those not on probation" and limitations under Fourth Amendment in particular).  Indeed, Shaw himself is subject to an unchallenged probation condition that requires him to "allow the probation officer to visit [him] at any time at [his] home

or elsewhere, and [he] must permit the probation officer to take any items prohibited by the conditions of [his] supervision that he or she observes in plain view."  Judgment at 5.  The D.C. Circuit has also held, consistent with caselaw from other circuits, that probationers may be compelled to provide a mandatory DNA sample.  See Johnson v. Quander, 440 F.3d 489, 496 (D.C. Cir. 2006); see also United States v. Kincade, 379 F.3d 813, 832, 840 (9th Cir. 2004) (*en banc*); Nicholas v. Goord, 430 F.3d 652 (2d Cir. 2005); United States v. Sczubelek, 402 F.3d 175 (3d Cir. 2005); Jones v. Murray, 962 F.2d 302 (4th Cir. 1992); Groceman v. U.S. Dep't of Justice, 354 F.3d 411 (5th Cir. 2004); Green v. Berge, 354 F.3d 675 (7th Cir. 2004); United States v. Kimler, 335 F.3d 1132 (10th Cir. 2003); Padgett v. Donald, 401 F.3d 1273 (11th Cir. 2005).  Ordinary citizens, needless to say, face no such compulsion.

Probationers' constitutional rights are limited in a host of other ways, too.  The Courts of Appeals have approved conditions that prohibited various probationers from running for office or engaging in political activity, see United States v. Tonry, 605 F.2d 144, 145–46 (5th Cir. 1979); associating with a fiancé, see United States v. Bortels, 962 F.2d 558, 559 (6th Cir. 1992); belonging to or participating in "any Irish Catholic organizations or groups," Malone v. United States, 502 F.2d 554, 556–57 (9th Cir. 1974); see also generally 6 Wayne R. LaFave, Jerold H. Israel, Nancy J. King, & Orin S. Kerr, Criminal Procedure § 26.9(b) (4th ed.) (describing conditions limiting a probationer's First Amendment rights); or even requiring total abstinence from alcohol.  See, e.g., United States v. Thurlow, 44 F.3d 46 (1st Cir. 1995).  A whole range of constitutional liberties that ordinary citizens possess is commonly restricted, even quite severely, for those serving terms of probation.

The Circuits vary in the precise showing they require to curtail a probationer's constitutional rights.  In one articulation, from the First Circuit, a restriction is permissible unless

it is "clearly unnecessary." United States v. Smith, 436 F.3d 307, 310–11 (1st Cir. 2006).  In

others, the standard appears to require something akin to narrow tailoring.  See United States v.

Myers, 426 F.3d 117, 126 (2d Cir. 2005) (explaining that supervised-release condition that

restricts fundamental rights must be narrowly tailored); United States v. Loy, 237 F.3d 251, 256

(3d Cir. 2001) ("[A] condition that restricts fundamental rights must be narrowly tailored and

directly related to deterring the defendant and protecting the public.") (internal quotation

omitted); see also Goings v. Ct. Servs. & Offender Supervision Agency for D.C., 786 F. Supp.

2d 48, 70 (D.D.C. 2011).  Other compilations phrase the standard in still other ways, and the

D.C. Circuit has yet to articulate a precise test.  See, e.g., 6 LaFave et al., Criminal Procedure

§ 26.9(b) ("A probation condition is not invalid merely because it affects the probationer's

ability to exercise constitutionally protected rights, but such a condition requires 'special

scrutiny'" and is impermissible "if the impact upon the probationer's rights 'is substantially

greater than is necessary to carry out the purposes' of probation.") (internal citations omitted).

    While the required strength of the Government's showing may vary, however, the

Circuits have generally coalesced around a common trio of factors to which they look.  Those

are: (1) "the purposes sought to be served by probation"; (2) "the extent to which constitutional

rights enjoyed by law-abiding citizens should be accorded to probationers"; and (3) "the

legitimate needs of law enforcement."  3 Sarah N. Welling, Federal Practice & Procedure

(Wright & Miller) § 547 (5th ed. 2023) (formatting modified); see also United States v.

Consuelo-Gonzales, 521 F.2d 259, 262 (9th Cir. 1975) (assessing "the purposes sought to be

served by probation, the extent to which the full constitutional guarantees available to those not

under probation should be accorded probationers, and the legitimate needs of law enforcement");

United States v. Stine, 675 F.2d 69, 72 (3d Cir. 1982); Owens v. Kelley, 681 F.2d 1362, 1366

(11th Cir. 1982).  Courts have used that framework to assess challenges arising under the First and Fourth Amendments, as well as those relating to a host of substantive-due-process rights derived from the Fourteenth Amendment.  This Court sees no reason to treat the Second Amendment any differently and will accordingly follow that guidance and assess those factors here.

> 2. *Application to Shaw's Challenge*

This Court has already explained in its statutory discussion how the first and third factors strongly favor a firearms restriction here.  The remainder of its analysis focuses on the admittedly mushy second element, which looks at the nature of the constitutional right in question and assesses the extent to which such right should be afforded to misdemeanor probationers.

This second prong has been described as requiring an examination of whether "the condition imposed involves a proper accommodation between," on the one hand, "the need" for the condition, and on the other, "those [constitutional rights] which [the defendant] retains." United States v. Pierce, 561 F.2d 735, 740 (9th Cir. 1977).  In Bruen, its most recent case addressing the scope of the Second Amendment, the Supreme Court provided some guidance on that latter half of the balance.  It counseled that the Second Amendment's protections attach only to "ordinary, law-abiding citizens" or, at the very least, attach to other citizens with less force. Bruen, 142 S. Ct. at 2122.  In that case, the Justices examined whether New York could prohibit "law-abiding citizens" from carrying firearms for self-defense.  Id.; see also United States v. Garrett, No. 18-880, 2023 WL 157961, at *2 (N.D. Ill. Jan. 11, 2023) (describing Bruen similarly).  Bruen took pains to emphasize that it did not address the "longstanding prohibitions on the possession of firearms by felons" that the high court in District of Columbia v. Heller, 554

U.S. 570 (2008), had called "presumptively lawful." Id. at 626, 627 n.26. In a footnote, the Court in Bruen emphasized that its opinion should not be "interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes" because those regimes "do not necessarily prevent 'law-abiding, responsible citizens' from exercising their Second Amendment right to public carry" and "are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" Bruen, 142 S. Ct. at 2138 n.9. Indeed, the Bruen majority used the phrase "law-abiding" to describe "the people" whose rights the Second Amendment guarantees no fewer than fourteen times. Meanwhile, Justice Kavanaugh's concurrence echoed the Heller Court's reassurances concerning the presumptive constitutionality of felon-dispossession laws. Id. at 2162 (Kavanaugh, J., concurring). And Justice Alito's concurrence emphasized the narrow scope of the Supreme Court's holding, which he characterized as deciding only that "a State may not enforce a law . . . that effectively prevents its law-abiding residents from carrying a gun" for the purpose of self-defense and saying "nothing about who may lawfully possess a firearm." Id. at 2157 (Alito, J., concurring).

As a result of that guidance, courts across the country have emphasized this "law-abiding citizens" language en route to holding that the Government may, consistent with Bruen, disqualify convicted felons from exercising rights that the Second Amendment otherwise guarantees. See, e.g., United States v. Coleman, No. 22-8-2, 2023 WL 122401, at *2 (N.D. W. Va. Jan. 6, 2023) ("The Supreme Court notes throughout its decisions that the challenging parties are 'law-abiding' citizens. The implication is clear: the reach of Bruen ends at the feet of those individuals who are not law-abiding citizens."); United States v. Medrano, No. 21-39, 2023 WL 122650, at *2 (N.D. W. Va. Jan. 6, 2023) ("The bottom line is Mr. Medrano's status as a felon removes him from 'the people' enumerated in the Second Amendment."); United States v.

Seiwert, No. 20-443, 2022 WL 4534605, at *1 (N.D. Ill. Sept. 28, 2022) (right defined in Heller "extends only to 'the people,' which encompasses only 'law-abiding, responsible' citizens who keep or bear arms for 'lawful purposes.'") (quoting Heller, 554 U.S. at 635); United States v. Ingram, No. 18-557, 2022 WL 3691350, at *3 (D.S.C. Aug. 25, 2022) ("By distinguishing non-law-abiding citizens from law-abiding ones, the dicta in Heller and McDonald clarifies the bounds of the plain text of the Second Amendment.  This, coupled with the majority's focus in Bruen on the Second Amendment rights of 'law-abiding citizens' throughout the opinion convinces this Court that the Supreme Court would conclude that these statutes fail to infringe on any Second Amendment rights."); United States v. Price, No. 21-164, 2023 WL 1970251, at *4 (N.D. Ill. Feb. 13, 2023); Garrett, 2023 WL 157961, at *2 (collecting cases).  At least 58 courts have rejected challenges to such felon-in-possession laws.  See Garrett, 2023 WL 157961, at *2.

The logic of that body of authority suggests that at least some misdemeanants — who are similarly not "law-abiding citizens" — might not enjoy the Second Amendment rights that other citizens do.  See United States v. Nutter, No. 21-142, 2022 WL 3718518 (S.D. W. Va. Aug. 29, 2022) (upholding prohibition on firearm possession by person convicted of domestic-violence misdemeanor); cf. United States v. Jackson, No. 22-141, 2023 WL 2242873, at *7 (D. Md. Feb. 27, 2023) (canvassing district-court opinions that have "rejected post-Bruen challenges to status-based gun laws on the ground that the restricted people are not law-abiding, responsible citizens to whom the Second Amendment applies"); United States v. Carpio-Leon, 701 F.3d 974, 975 (4th Cir. 2012) ("[T]he Second Amendment does not extend to provide protection to illegal aliens, because illegal aliens are not law-abiding members of the political community . . . .").

At the very least, that reasoning emphasizes that the nature of one's Second Amendment right, as the Supreme Court has repeatedly described it, depends to an extent on being a law-

abiding citizen.  For our purposes, the upshot is that this right is the quintessential example of a right that is susceptible to limitation during a term of probation.  After all, if there are any rights probationers can be deprived of — and, as discussed above, there certainly are — then a right that inherently applies with full force only to law-abiding citizens should be no exception.

On the other side of the factor-two balance are strong reasons that the specific restriction proposed — a prohibition on firearms possession during the two-year probationary term — is necessary here.  A discussion of these reasons largely duplicates the Court's prior statutory analysis, which examined whether the condition served the goals of probation and was worth the intrusion on Shaw's liberty interests.  As discussed there, the nature of the January 6 insurrection that gave rise to his conviction, the fact that Shaw was still serving a term of probation on that day, and the Probation Office's articulated interest in the safe administration of Shaw's supervision all point towards the condition's necessity.  Weighing those reasons against a constitutional right that at least to an extent depends on the defendant's law-abidingness, this Court concludes that the second element, like the first and third, counsels strongly in favor of the restriction's constitutionality.

The Court emphasizes that its holding is only that any Second Amendment right applicable here may be limited during the period of probation, just as other myriad constitutional rights are.  The question of whether that Amendment would tolerate a law barring people who have committed misdemeanors from possessing firearms after the completion of their sentence is not before the Court, and that could well require the type of historical analysis that the Supreme Court contemplated in Bruen.  Here, however, the analytic posture is very different.  This case does not challenge a gun law; it challenges a probation condition, which (as many probation

conditions do) restricts a constitutional right.  The Court's analysis is accordingly limited to the validity of that probation condition, which it here approves.

## IV.      Conclusion

For the foregoing reasons, the Court will grant the Government's Motion.  A separate Order so stating will issue this day.


/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  May 24, 2023